The next case is number 22-1979, United States v. Michael Rand. At this time, would counsel for the appellant please come to the podium and introduce herself on the record? Thank you. Noreen McCarthy for Michael Rand. And may I please reserve one minute? Thank you. We ask that the court vacate his sentence because it was not procedurally reasonable nor substantively reasonable. In this case, there are a number of things that are just simply not in dispute, factually, that this was Mr. Rand's first attempt at any kind of rehabilitation or recovery from his lifelong addiction. It was his first violation of his supervised release. And So are you suggesting that every person who first time should get a pass, free pass? No, but especially when the violation includes a drug relapse when they're on the road to recovery, I think that there is actually a presumption both by Congress and by the probation department that your first time, you don't end up back in prison, especially for two years, not for the maximum. If the court wanted to consider some of the other issues that Which here, for example, I think it was very important for the court that your client had lied about the COVID issues. Right. Right. And the problem we have with that is that that lie was actually a grade C violation. And that actually, specifically if the parolee was dishonest, it was a grade C. So the Sentencing Commission had already taken that into account and said for that grade, for that type of offense, we recommend six to 12 months. And the court said, well, I think I'm going to do it for two years. OK, but here, there's not only the lie, there's also the drug use, which of course, I get your point. And having gone, you know, presided over revocation hearings, that's something the court will consider. But also, he had moved. He had not provided the, you know, he was providing not the correct information. And you know, there's a bunch of factors together, which that's, I believe, that's what the court does. You know, he looks at all of them and says, based on these factors, I'm going to give him the maximum. Right, I understand that. But all of these things are related to his relapse, which was his first relapse, his very first. His first ever successful inpatient treatment and his first relapse after that successful treatment. So all of those, certainly the lie. And what concerned me about the court's characterization of that lie, the court said that this was indicative of being a danger to the community and recidivism. And I have to say, I'm not sure I see that. I think if he had lied and said he didn't have COVID and then went into the probation department while he was contaminated, maybe that would be a danger to community. But I'm not sure where the danger to community was here from just using a lie that, and he lied, of course, because he had relapsed and he didn't want to get caught. All of it is related to the relapse. So I think what we kept hearing from the judge was how contemptuous his conduct was. And the judge was offended. The judge had given him a break and was offended. And that all may be true, and judges are human, but it doesn't justify going outside what the Sentencing Commission has recommended. Because Congress is the one who tasked the Sentencing Commission to come up with these guidelines. And so they're not supposed to just be ignored. And so procedurally, it was unreasonable, one, because there were not really, there was no articulation on the record that was justifiable. It doesn't make him a danger to community that he lied about having COVID. It just simply doesn't. And he didn't put, the court did not put anything in writing, which the court was required to do if it went outside the recommendation of the Sentencing Commission. But there is a transcript, which is part of the appendix. And specifically, I'm looking at the appendix. He says, lying indicates danger to community. That's my concern. Deceit suggests to me likelihood of recidivate. It's more than just failing off the wagon because you had days to make good on this, to call probation. You turn yourself in. You did not do so. Then the judge says, ultimately, I think 12 months is too late. A sentence for this violation. He recognizes the grade C violation, but also the maximum, he says, the combination of the lying, absconding right after you appeared in front of me and I had credit, all of your rehabilitation, and then just to act brazenly contemptuous of the court and probation and the supervision conditions that were placed on you is just to be worthy of the maximum sentence. So isn't he giving an adequate explanation? No, because what he's talking about is I'm going to punish you for being contemptuous of this court. I'm punishing you for that. And that's specifically excluded. And don't forget, we're talking about resentencing here, not an initial sentencing. And that actually is different, because punishment is specifically excluded for that. Punishment, seriousness of the offense, and promoting respect for the law. And when the court, at least twice, refers to contemptuous behavior, the court is talking about not respecting the law in that respect. The same with rehabilitation. That's right in the statutes, that you are not supposed to actually punish somebody or incarcerate somebody for rehabilitation. And that's exactly what happened here. Let's put aside the second one for the moment. Assuming the district court transcript doesn't show that the reason the sentence was selected was in order to provide the rehabilitation. On the question about whether the district court was relying on an impermissible factor, which was contempt for the court, could you just explain to me the history? In the first proceeding, where the district court gave the break to the defendant, what happened? And then what happened after? So I understand the timeline. Well, that was, I guess, the initial one was in April, when the court allowed him to go into the residential treatment. And then they came back. And what was the alternative that the district court was foregoing? What could the district court have done at that time, rather than allowing the treatment? Oh, allow him to stay in prison. So from the district court's perspective, I've been through this once. And what was the thing that was the initial sentence for the supervised release? Correct, in August was the initial sentence, when the court and the prosecutor And what kind of prison time was the defendant facing at the time when the release was allowed for the treatment? I believe it was two years. For two years? I believe, but I could be wrong on that. So when you say contempt, I mean, I guess just so you have a chance to respond to it, the alternative reading of the record is the district court is trying to make an assessment of, given the infraction, what kind of punishments appropriate, with the idea that the aim is, if you're going to be out, you should be doing well, not committing infractions. Of course, yeah. So at time one, when I could have put you in prison for two years, I thought you made a pretty compelling case that you should be given an option for treatment. So you're given that option. Now, notwithstanding all that we just saw about you and all the representations you made, I then see you telling this falsehood in the context of all the other things Judge Helpe just reviewed, what's unreasonable about the district court saying, you know what? In light of this, the two years seems like the right sentence for you, because you had your chance. But I don't have any confidence that if I give you another period of supervised release, we won't be right back here again. That's just a deterrence. Isn't that just specific deterrence? Well, I think we have to remember, it wasn't just that he got straight probation last time. He has spent 17 months in prison already, if you include the turning point, by August. And then he comes back. And if you take that argument, then it sort of defeats the whole purpose of the Sentencing Commission making any recommendations and saying there's any grade to any offense whatsoever. And that then the trial court should have complete discretion with no recommendations at all by the Sentencing Commission, because this is a different thing. It is already he's done this. Well, I guess what I'm saying, not all defendants that are on supervised release are on supervised release for the reasons this particular defendant was, which was the particular representations that were made to the district court. And the district court deciding, OK, I'm going to let you have supervised release for this period, given all that you've said, then to discover maybe it was a snow job. That's not contempt. That's just an assessment of how likely is it allowing you to remain on supervised release is a wise decision. That's, I guess, what I'm really asking. I see what you're saying. May I respond to that? So it brings up a very interesting point, because this is a man who, during his 17 months of incarceration, worked really hard. It wasn't a snow job for the court at the time. He worked really hard. And he became actually a manager at turning point. And he did everything he should have done. And he got out. And as often happens, especially when somebody is just released or has just completed, for the very first time, a drug rehab program, he relapsed. We have to remember, this is a disease. It isn't like a conscious choice to do that. This is a disease that the man had. And he relapsed. And that happens. And so what we're doing by saying that the judge now can give him a longer re-sentence time than he might have given somebody else who had served his full term, then you're And that was the part about this that sort of irked me, is that the court just kept going on about, you had done so well. You had done so well. You had done so well. So now I'm really going to punish you. Forgetting that we're really talking about a disease here and sitting in prison for two years is not going to do anything. Thank you. Thank you. Thank you, counsel. At this time, if counsel for the appellee will introduce yourself on the record. Good morning, and may it please the court. My name is Aaron Gingrande, and I represent the government in this matter. So I want to just circle back to a point that Judge Helpe had made earlier, which is, what was really the basis for the sentence upon this revocation of supervised release? Because one of the defendant appellant's main arguments is that the guidelines already took this into account, that the judge really didn't have a basis to go above that guideline sentence. And the judge, I think, was very clear in the transcript, both in that section that Judge Helpe cited and in other parts of the transcript, as to what the basis of that decision was, which is really the combination of these multiple violations. We're not just talking about one grade B violation, which could be equated potentially to the relapse of using drugs again. We're talking about one grade B violation coupled with three grade C violations, which involved lying to probation about his whereabouts, lying that he had COVID as an excuse to even initiate his supervision, which he never did, did not comply with the court's order to report to probation within 24 hours after receiving the time served sentence. In addition to that, going off the grid entirely, not providing a change in address, such that probation could even adequately track the defendant down, and not entering a drug treatment program when probation did go that extra mile to track him down, located him, and directed, or I should say, at least made contact with him, and told him in that September 1st conversation that you need to go to treatment. And remember, it wasn't until seven days after that conversation with probation, where probation had already been trying to get in touch with him for roughly a month, that in that September 1st conversation, Mr. Rand makes the admission about his drug use and the fact that he had relapsed. And probation says, get yourself into treatment. This is where I want you to report. But they did not file the petition for an arrest warrant at that time. Their instruction at that time was, get yourself into treatment and the referral. And he didn't do that. And after a week, they had lost him again. And so he had an opportunity to make good on that one misstep, if you will. To the extent that this can be classified as falling off the wagon, and I don't think it can, then he had that opportunity when probation approached him on September, or made the call on September 1st, rather, and confronted him about his not being in a drug treatment program, and gave him the opportunity. And he didn't take advantage at that point. And then the petition for his arrest is filed. Then after that, he becomes a fugitive of the week, still can't be found, doesn't report to his drug treatment when he's supposed to. So I think it's an important point, because this is about a set of circumstances that convinced the judge that if she were to simply not provide an adequately lengthy sentence, that he wouldn't get the message. Because he wasn't even open to receiving the help that probation was trying to provide. In your account, you haven't referred to the piece of the district court's explanation that seems to be related to what happened the first time around. Which was, you made all these representations to me, I gave you this chance, now you're doing this. And opposing counsel says, well, that is not actually a permissible ground for raising the sentence greater than it was. It's hard to read the transcript in a way that makes that not part of the rationale the district court gave. In your rendition of it, you didn't address that aspect of what the district court explained as the reason for the sentence. So if we put that into the mix, does that create a problem? And if not, why not? So Chief Judge Baron, this gets back to the question that I think you were discussing earlier with defense counsel exactly, which is, is this permissible? Is this something that the judge is able to consider in the context of relevant sentencing factors under the statute, under the revocation statute? And I believe the answer is yes. The judge is allowed to look at the history, including the history of the judge's own interactions with the defendant in this case, the fact that the judge had given the defendant the opportunity to be released from prison to enter the drug treatment program in this case. And then immediately after receiving the time served sentence, turns around, absconds, doesn't make contact with probation, the judge shouldn't be expected to simply pretend that none of that happened in the past. What's the relevant of it having happened in the past? The relevance is exactly what you said to defense counsel, which is deterrence. The judge needs to be able to examine in the context of deciding what sentence to give, what will adequately deter the defendant from doing this again. And the judge made clear, I think, in the transcript, that the judge was concerned about the defendant's recidivism, was concerned about the defendant going out if he was not to be given a serious sentence that gives the message, you can't do these things, you can't lie to probation, you can't abscond, et cetera, that this would just happen again. And so the judge cites deterrence and goes to site. Just to unpeel it a little bit, I guess what I'm having trouble in my own mind unpacking is, it sounds like you're saying if all there had been was the one misrepresentation, given the six months recommendation on the guidelines, the two-year sentence might be unreasonable. But, in fact, there was all this other stuff, right? Absconding, et cetera. Yeah, the one misrepresentation, yes. I think that's fair to say. OK, so then, but the district court, in fact, didn't rely just on that, also relied on the way you interacted with me in the prior setting. So, and then you say, but that's relevant. So if we had a case in which all there was was the one lie, which would trigger the six months, and that lie came after what had happened here, which is, you've made all these representations, I'll give you the time to go into treatment, then you made the lie, would that justify the two years? I think you would probably say no, right? I would say, again, the court would have to undergo the analysis of whether that was substantively reasonable. From my own personal standpoint, I would think that that would be harsh in this instance for just telling a falsehood, if that's all it was. But remember, that falsehood, again, the context was, it's a falsehood to excuse him from ever having started his supervision to begin with. And so he was off the grid. Probation did not know where he was for a lengthy period of time. And even, really, up until the day of arrest, didn't know what his correct location was. But as to your question, as to whether a two year maximum, a statutory maximum. I guess the real question is, there is some concern with the district judge. And as the opposing counsel puts it, not focusing on deterrence, and instead focusing on contempt for the court. And how we assess whether that line's crossed, I guess is really what I'm asking, what the government has a view of how we're supposed to assess that. And the government's view on that point, Your Honor, Chief Judge Barron, is that this was not vindictive. This was not a case where a judge is simply giving a sentence based on personal emotion and animus toward the defendant. This was based on concepts of deterrence, what will adequately deter the defendant appellant from doing this again. And what will prevent recidivism, such that when the defendant is released, he takes the lessons to heart and carries that with him. And I believe that the case law supports that judges are allowed to take that into account, to take in what is needed to deter the defendant. Let me ask you, obviously the judge has a lot of discretion in these matters, and I've done this hundreds of times. But one thing is, and again, based on my experience, for example, you can have a defendant who continues to test positive, is trying to do the best, but he's having problems, test positive. The judge can give break. But I think what's here is that not only am I giving you breaks, probation gave you break, but there's lies, lies, you're doing that. So can the district judge give decisive weight to that? Because to me, this is not simply you tested positive, because I think judges are trained, and they know it's an addiction problem. Here, there's more beyond the addiction. That's right, and Judge Helvey, I would say yes, the judge is allowed to take that into account and can give that great weight. And remember, the judge even acknowledges this in her opinion. She says that, on the transcript and in imposing the sentence, I should say, the judge says, acknowledges that the offense with the greater, the violation with the greater guideline sentencing range is the grade B violation. That is the possession of a narcotic drug, and in this case, three of them, cocaine, methamphetamine, and fentanyl. But the judge is concerned about how the defendant reacted to that, to his relapse, but also to the orders of the court and his noncompliance, and the lie specifically that he told both the probation and I should add to his drug treatment program when he absconded. And here are the variants, because the guidelines, it's approximately 12 months, or what was it, eight to 12 months, whatever. So here, the variance is a year above the maximum, correct? Well, so to be precise on this, the grade B violation carried a 12 to 18 month guideline sentencing range, and he received a statutory maximum of two years. So we're not too far from, you know. That's right. We're not too far from the guidelines, and the guidelines say that when you have various offenses, the guideline range that is employed is the guideline range of the highest grade offense. So that would be 12 to 18 months in this case. If you're just looking at a single grade C offense, which the guidelines are six to 12 months, and you're right, that would be one year above that. But here, we do have the grade B. And technically, the court could, again, didn't do it here, but in a sense, Judge McCaffrey could have said, you know, 12 to 18 months, and for the other violation, it's up to six months, and I would do those consecutively. She has that discretion to do that exercise, even though she didn't explain it that way, correct? To do consecutive? Well, she could say, you know, you have for this one X amount of time for this one, and this is the maximum. And I think, you know, I should consider all, you know. Well, really, she has discretion to go up to the maximum.  you know, the equivalent. If you wanted to look at it that way, sure, yeah. Thank you. Thank you, and the government for discretion on this brief. Thank you, counsel. At this time, if counsel for the appellant would reintroduce herself on the record, there's a one minute rebuttal. Thank you. I do want to address a few things. Proposing counsel just said that the guideline range states that when there are multiple offenses, you take the highest one. That would be the 12 to 18. So all this talk about that there were other grade C is already addressed by the Sentencing Commission. And in that case, you take the highest one. I actually didn't see anything, and I could be wrong, but I didn't see anything saying that they could do that consecutively. If the Sentencing Commission, the guideline recommendations are that you take the highest one, it doesn't say that you can do those consecutively. So we may be, if the judge had done them consecutively, we may be before this court again appealing that. And that might be an issue of first instance, because I actually didn't see anything in the regulations that would allow that. The second, when we talk about on the record. Just so I follow, you're now agreeing that the range is 12 to 18? No, I'm agreeing that for the grade B, it was 12 to 18. But I think that the court was focusing on the conduct that constituted a grade C. And therefore. What's the significance of the focus point? In other words, isn't the range 12 to 18? The range is 12 to 18. But to be clear, whether her sentence was inside the range or outside the range, she still was supposed to, on the record and in writing, so not just in the transcript, in the written judgment as well, state a plausible explanation for her sentence. And our position is she didn't do that. And I actually also don't think, with respect to a resentencing, that you do go back to that first offense. I think the resentencing is based on the new offense of what happened. And so our new offense here is a positive drug test. And it is going off the wagon. And all the conduct that is attendant to that, which we know goes along with drug abuse, which is the lies. Thank you. Thank you very much. Thank you, counsel. That ends argument in this case.